The Honorable George Spence Attorney at Law 121 S. Main Street Bentonville, AR 72712
Dear Mr. Spence:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for my opinion on the question of whether the Bentonville School District (the "District") should disclose certain documents that have been requested by the media pursuant to the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -107. You indicate that you represent the District, which has been asked by various news media to produce correspondence to you from counsel for Dr. Lewis Holloway, former District Superintendent. As reflected in minutes attached to one of the letters, Dr. Holloway was relieved of his duties by the Bentonville Board of Education (the "Board") on February 29, 2000. The requested correspondence comprises three letters, respectively dated March 24, 2000, April 21, 2000, and May 4, 2000, generally protesting Dr. Holloway's termination and negotiating the "buy-out" of his contract. You report having provisionally concluded that these letters should be disclosed because they are public personnel records whose disclosure would not constitute an unwarranted invasion of privacy. As discussed below, I agree with these conclusions and believe the letters must be disclosed pursuant to the FOIA.
With certain specified exceptions, "public records" are subject to inspection and photocopying during regular business hours by any Arkansan who so requests. In my opinion, the letters at issue are clearly "public records" as that term is defined at A.C.A. § 25-19-103(1):
 "Public records" means writings, recorded sounds, films, tapes, or data compilations in any form, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
You are the custodian of the letters as counsel for a "public office," which in effect renders you a "public officer" for purposes of this request. See City of Fayetteville v. Edmark, 304 Ark. 179, 801 S.W.2d 275
(1990) (city's outside counsel, "the functional equivalent of the regular city attorney," obliged to produce memoranda in his possession). Moreover, the letters definitely qualify as "a record of the performance or lack of performance of official functions . . . by a public official or employee."
Among the statutory exceptions to the general rule that all public records are subject to disclosure is the following:" Personnel records to the extent that disclosure would constitute clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(10). The FOIA does not define the term "personnel records." However, this office has consistently interpreted the term to mean all records other than employee evaluation and job performance records that pertain to individual employees, including former employees. See, e.g., Ark. Ops. Att'y Gen. No. 99-305
and 99-147, citing Watkins, The Arkansas Freedom of Information Act (m m Press, 3d ed., 1998), at 134. The term "all records" includes documents received from third parties, as in the present case. See Ark. Op. Att'y Gen. No. 98-001 (attached hereto). Moreover, despite the fact that the letters contain certain characterizations of Dr. Holloway's performance, they cannot be categorized as "employee evaluation or job performance records" because they were not generated by the employer as part of an investigation or evaluation of the employee's performance. See
Ark. Ops. Att'y Gen. No. 98-001 and 99-026. Consequently, in my opinion the letters clearly qualify as personnel records.
The question remains whether disclosure of these personnel records would constitute a "clearly unwarranted invasion of personal privacy." I discussed in detail the meaning of this phrase in the attached Ark. Op. Att'y Gen. No. 99-305, offering the following analysis:
 The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." The Arkansas Supreme Court, however, has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593, 826 S.W.2d 252
(1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy."
 The Arkansas Supreme Court stated in Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992):
 The fact that section § 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section § 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section § 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
 Young, 308 Ark. at 598.
Having applied the Young balancing test to the letters at issue, it is my opinion that the letters must be disclosed. As noted above, the letters, which were written by Dr. Holloway's own attorney, are in no way critical of his performance; on the contrary, as might be expected, they are at times effusive in his praise and at one point represent that the District has been similarly complimentary over time in Dr. Holloway's performance evaluations. The letters appear primarily intended (a) to assert that alleged procedural irregularities by the Board encroached on Dr. Holloway's purported property interest in continued employment; and (b) to negotiate a buy-out of Dr. Holloway's contract, as approved in principle by the Board in open session.[1] In my opinion, disclosing the substance of these communications would in no way reveal the intimate details of Dr. Holloway's life or subject him to embarrassment, harassment, disgrace, or loss of employment or friends — all factors the Supreme Court has identified as significant in gauging the strength of the privacy interest. Young, 308 Ark. at 598. Indeed, the only remotely embarrassing or potentially compromising disclosure in the letters is their acknowledgment that Dr. Holloway was involuntarily relieved of his duties — a fact that is already a matter of widely publicized public record. Accordingly, in my opinion Dr. Holloway has at most a minimal interest in maintaining the privacy of the records at issue.
By contrast, I believe the public interest in disclosing the letters is very strong. You report having received from various media outlets requests to inspect and to photocopy the documents. The media have further contacted this office seeking access to this Opinion at the earliest opportunity. From the time Dr. Holloway was relieved of duty, his dispute with the Board has apparently been the subject of intense media scrutiny in Northwest Arkansas. These events reflect a very high level of public interest in Dr. Holloway's travails, which is quite understandable given his prominence and the importance of this issue to the Bentonville community. As reflected in the attached Ark. Op. Att'y Gen. No. 88-078, this office has previously opined that there is a "compelling public interest" in the disclosure of documents bearing on a public school superintendent's release from contract provisions. Precisely this interest applies in this case.
In my opinion, then, the strong public interest in disclosure of the letters far outweighs any privacy interest Dr. Holloway might have in the documents. Indeed, I am unpersuaded that Dr. Holloway's interests would be compromised in any way by dissemination of these letters, which his lawyer quite appropriately drafted to state his position in the most compelling of terms. Consequently, the FOIA dictates that the letters be disclosed.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
Enclosures
[1] This approval is reflected in the minutes of a special meeting held on February 29, 2000, attached as an exhibit to the correspondence of April 21, 2000, during which the Board of Education also voted to relieve Dr. Holloway of his duties.